## TOM SHUMATE V. THE STATE.

No. 18909. Delivered April 21, 1937.

The opinion states the case.

*Futch & Strong,* of Henderson, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—Appellant was convicted of the offense of theft of hogs, and his punishment was assessed at confinement in the state penitentiary for a term of two years.

Appellant's only contention is that the evidence is not sufficient to warrant his conviction, in this, that the accomplices who testified to the commission of the alleged offense were not corroborated. The testimony adduced upon the trial by the State shows that on the 1st day of February, 1936, and for sometime prior thereto Floyd Moody had approximately fifty hogs running on the open range in the vicinity of the appellant's home. On or about the last day of January Moody had been down on the range and saw his hogs. A day or two later he went back there and found some of his hogs were missing. He then went to the appellant's home and found that a pen had been constructed recently. He inquired of appellant if he had seen anything of his hogs. Appellant replied that on Saturday night he heard hogs squealing at or near his lot; that he went towards the barn and a fellow threw a flash light in his face and another put a six-shooter in his side and made him go back to the house; that after he got back to his house he took his shotgun and shot at them with small shot, and then returned to his house to get larger shot. An inspection of the premises disclosed that hogs had been recently loaded out of the pen.

Red Woodard testified that late on the afternoon of Saturday, February 1st, he, together with Marshall Bateman, Mrs. Bateman, and Miss Jim NcNew, went to appellant's home in a gray truck; that appellant was not at home at that time; that they left, but in about an hour returned and found appellant at home; that appellant told him that he had the hogs in the pen; that the witness and appellant looked at the hogs while Bateman and the ladies remained at the truck; that when he and appellant returned to the truck he, the witness, told Bateman in appellant's presence that appellant had some nice hogs; that he, Woodard, and Bateman took the ladies home;

that they then went and got John Bateman, Buddy Hill, Ray Ellis, and Barney Skaggs, with his wench truck, and all went to the appellant's home about midnight to get the hogs; that with the assistance of the appellant they loaded the hogs; that they then started to leave, but bogged down several times and Barney Skaggs with his truck pulled them out; that the trucks made much noise and the hogs did considerable squealing while being loaded; that after they reached the highway Barney Skaggs and Ellis went home and they started to Dallas with the hogs and sold them; that John Bateman, Buddy Hill, Barney Skaggs, Ray Ellis all knew that they were going after stolen hogs before they started to appellant's home and that all of them, including the appellant, participated in the theft of the hogs.

Marshall Bateman testified to substantially the same facts. Barney Skaggs gave similar testimony, but denied that he knew they were going to steal any hogs or were going after stolen hogs. He said he was employed by Woodard and Bateman to accompany them to appellant's home with his wench truck to pull them out in the event they bogged down; that they paid him $7.50 for his services.

Beeman Strong testified that he lived in the neighborhood where appellant resided; that late in the afternoon of the night when the hogs disappeared he saw a gray Chevrolet truck parked at appellant's home; that on the following morning he saw appellant, who inquired of him if he had seen that gray truck in the community; that when he, the witness, replied that he had and that he didn't think it was cruising through the country with any good purpose, appellant then asked him if he knew George Campbell had been killing hogs in the woods; that if he, the witness, would go with him, he would show him where Campbell had killed two and covered the blood. Appellant also said that something happened over at his place the preceding night and inquired of the witness if he thought he would see John or Floyd Moody on that day; that if he did to tell them something happened at his place.

Appellant testified to an alibi for himself and denied any knowledge of the theft of the hogs or any participation therein. His wife also testified in support of his plea of alibi.

The court instructed the jury that John Bateman, Marshall Bateman, Buddy Hill, Ray Ellis, Barney Skaggs, and Red Woodard were accomplices as a matter of law, that appellant could not be convicted on the uncorroborated testimony of an accomplice, and that one accomplice could not corroborate an-

other. It occurs to us that the testimony of the accomplice is sufficient to connect appellant with the theft of the hogs. If they are corroborated either by direct or circumstantial evidence, the requirements of the law have been met. This, however, brings us to a consideration of two questions: first, is the testimony of the accomplices sufficiently corroborated not only as to the commission of the offense, but also as to the appellant's connection therewith?; second, were the alleged stolen hogs the property of Floyd Moody as charged in the indictment? That some hogs were penned and loaded at the appellant's barn, as testified to by the accomplices, seems to be corroborated by the appearance of the premises on the following day. This, however, does not connect the appellant with the commission of the offense. The testimony of Mrs. Bateman, which was admitted without objection, shows that on the night prior to the time the alleged offense was committed she, in company with her husband, Miss Jim McNew, and Red Woodard were at appellant's home; that Red Woodard and appellant had a conversation near the truck about some hogs; that Woodard took a large flash light out of it and walked away; that they were gone about fifteen minutes when they returned to the truck; that Woodard said to Marshall Bateman, in the presence of appellant, that appellant had some nice hogs in the pen. It occurs to us that this circumstance was sufficient to show that hogs were already in the pen; that they had been penned during the day prior to the time that the young men and ladies appeared at the appellant's home just after dark. Appellant testified that from his experience in handling hogs that they could not have been penned after night. Appellant knew at the time he fired, if he did so, that someone was on his premises loading hogs. He heard the hogs squealing; he heard the running of the motor trucks, but he made no report thereof to the officers. We think that these circumstances are sufficient when taken in connection with the accomplices' testimony to show appellant's guilty knowledge of and his participation in the offense.

The next serious question presented by the record is: Whose hogs were stolen? There is no direct testimony that the hogs belonged to Floyd Moody as charged in the indictment except the circumstances that Moody missed some hogs from the open range about the time the hogs in question were taken from appellant's premises. Appellant testified that Moody had quite a number of hogs running near his premises; that at times they would come to his lot at night; that no one in the

community lost any hogs but Moody. Moody testified that he lost a number of black and white spotted and also some red and white spotted hogs which weighed from one hundred and twenty-five to two hundred pounds. The flesh marks of the hogs Moody lost corresponded with the flesh marks and also with the approximate weight of the stolen hogs. We think that this is sufficient to show that the hogs stolen belonged to Moody.

Having reached the conclusion that the testimony is sufficient to sustain appellant's conviction, the judgment of the trial court is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.